UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| Kristopher Frazier,<br><br>    Plaintiff,<br><br>v.<br><br>Mac Churchill Auto Group, Inc.,<br><br>    Defendant. | § § § § § § § § § § | Civil Action No. |

**COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL**

Plaintiff, Kristopher Frazier ("Mr. Frazier" or "Plaintiff"), by and through undersigned counsel, files this Complaint against Defendant, Mac Churchill Auto Group, Inc. ("Mac Churchill" or "Defendant"), and, in support thereof, asserts the following:

**INTRODUCTION**

1. This action arises out of Defendant's marketing calls to Plaintiff's cellular telephone number in violation of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227. Defendant is a car dealership that was looking to buy cars for it's business, and in the process obtained Mr. Frazier's cellular telephone number from a marketing source. Defendant then called Mr. Frazier's cellular telephone. Plaintiff told Defendant that he was not

       interested in selling his car and asked that Defendant stop calling Mr. Frazier's cellular telephone. However, Defendant continued to call Plaintiff. Mr. Frazier explained to Defendant that he was going to file a complaint with the Better Business Bureau ("BBB"), and later did.. Despite this, Defendant still called Mr. Frazier's cellular telephone. In total, Defendant called Plaintiff approximately 20 times in one month. Plaintiff knew he was harmed, and—after looking into his legal rights— Mr. Frazier filed this lawsuit.

2.     The Telephone Consumer Protection Act ("TCPA") was designed to prevent calls like the ones described within this Complaint, and to protect the privacy of citizens like the Plaintiff. "Voluminous consumer complaints about abuses of telephone technology—for example, computerized calls dispatched to private homes—prompted Congress to pass the TCPA." *Mims v. Arrow Fin. Servs., LLC*, 132 S. Ct. 740, 744 (2012).

3.     In enacting the TCPA, Congress intended to give consumers a choice as to how telemarketers may call them, and made specific findings that "[t]echnologies that might allow consumers to avoid receiving such calls are not universally available, are costly, are unlikely to be enforced, or place an inordinate burden on the consumer." TCPA, Pub.L. No. 102–243, § 11. Toward this end, Congress found that:

> [b]anning such automated or prerecorded telephone calls to the

> home, except when the receiving party consents to receiving the call or when such calls are necessary in an emergency situation affecting the health and safety of the consumer, is the only effective means of protecting telephone consumers from this nuisance and privacy invasion.

*Id.* at § 12; *see also Martin v. Leading Edge Recovery Solutions, LLC*, 2012 WL 3292838, at* 4 (N.D. Ill. Aug. 10, 2012) (citing Congressional findings on TCPA's purpose).

4. Congress also specifically found that "the evidence presented to the Congress indicates that automated or prerecorded calls are a nuisance and an invasion of privacy, regardless of the type of call. . . ." TCPA, Pub.L. No. 102–243, at §§ 12-13. *See also, Mims*, 132 S. Ct. at 744.

5. Any violations by Defendant were knowing, willful, and intentional, and Defendant did not maintain procedures reasonably adapted to avoid any such specific violation.

## PARTIES

6. Mr. Frazier is a person who resides in Tarrant county, Texas.

7. Defendant is a domestic for-profit corporation car dealership with its principal place of business in Fort Worth, Texas. It's registered agent where process may be served is as follows: Mac Churchill, Registered Agent, 9000 West I-30, Fort Worth, Texas 76108.

## JURISDICTION AND VENUE

8. Defendant's principal places of business lies in Tarrant county, Texas, and a substantial part of the events or omissions giving rise to this claim also occurred in Tarrant county, Texas.

9. Venue is proper in the Northern District of Texas pursuant to 28 U.S.C. § 1391.

## FACTUAL ALLEGATIONS

10. Between June 26, 2017 and July 15, 2017, Defendant called Mr. Frazier on his cellular telephone number ending in 1310.

11. Mr. Frazier believes Defendant obtained his number from a website, called autotrader.com, a site Mr. Frazier visited only to inquire as to the value of his car.

12. A day after he visited autotrader.com, he began receiving calls from Defendant.

13. On June 26, 2017, Mr. Frazier received five calls between 9:00 a.m. and 6:59 p.m. The first three calls that Mr. Frazier experienced were within the span of two minutes. On the third call, Mr. Frazier answered the phone, to which he heard Defendant stating its name and informing Mr. Frazier that Defendant was calling regarding the auto trader inquiry. Mr. Frazier informed Defendant that Mr. Frazier was not interested in selling his car.

14. At 9:11 a.m., Defendant again calls Mr. Frazier. However, this time Mr. Frazier interrupts Defendant to tell Defendant that Mr. Frazier does not want to receive anymore calls. However, Defendant ignores this request and calls Mr. Frazier again at 6:59 p.m. In this call, Defendant claims to be a customer representative and asks if Mr. Frazier's questions were answered. Mr. Frazier again advises Defendant to not call anymore and, further, that Mr. Frazier plans on filing a BBB complaint against Defendant.

15. Not even a minute after this conversation, Mr. Frazier receives another call from Defendant at 6:59 p.m. After Mr. Frazier ignores the telephone call, Defendant leaves a message on Mr. Frazier's cellular telephone.

16. On July 13, 2017, Defendant begins calling Mr. Frazier again.

17. Starting at 6:21 p.m., Mr. Frazier receives a telephone call from the Defendant's same representative. Mr. Frazier again interrupts this representative, stating that he does not want to receive anymore calls and that Defendant needs to stop calling him.

18. Defendant again calls two more times at 6:22 p.m., both Mr. Frazier immediately sends to his voicemail. After the second call within the same minute, Mr. Frazier set Defendant's number to auto reject.

19. While on auto reject, Defendant called Mr. Frazier again at 6:23 p.m., four times at 6:24 p.m., three times at 6:25 p.m., and once more at 6:26 p.m.

20. Mr. Frazier left Defendant's number on auto reject, but Defendant continued to call Mr. Frazier. Defendant called once on July 14, 2017, at 3:08 p.m., and once more on July 15, 2017, at 11:40 a.m. One of these two calls was even the Manager of Defendant again asking about the auto trader inquiry.

21. The calls were dialed from phone number (817) 769-6745.

22. The purpose of the calls was to solicit Mr. Frazier to sell his car through Defendant's dealership, however, Mr. Frazier had no interest in selling his car.

23. Phone number (817) 769-6745 has been assigned to Defendant by it's communications subscriber.

24. Upon information and belief, Defendant employed an automatic telephone dialing system, an artificial voice, and/or a prerecorded voice to call Mr. Frazier on his cell phone. Plaintiff heard several seconds of dead air prior to a representative coming on the line. Additionally, Plaintiff would here a silence, sometimes with a click or beep-tone, before Defendant would pick up and start speaking.

25. Upon information and belief, this ATDS has the capacity to store or produce telephone numbers to be called, using a random or sequential number generator.

26. Occasionally, Plaintiff would receive calls from Defendant in which the caller was a recorded voice or message, rather than a live representative.

27. In total, Plaintiff has received at least 20 calls from Defendant on Plaintiff's cellular telephone between June 26, 2017 and July 15, 2017.

28. On June 26, 2017, at 9:11 a.m., Plaintiff clearly told Defendant to stop calling his phone and that he no longer wished to be contacted by telephone. Plaintiff interrupted the sales representative during his sales script and clearly told the representative to stop calling his phone.

29. Defendant received no prior express consent to call Plaintiff.

30. Defendant had no preexisting relationship with Plaintiff.

31. Despite this clear and unmistakable request, the calls continued without interruption.

32. Plaintiff was personally affected, becoming frustrated and distressed that, despite telling Defendant to stop calling Plaintiff's cellular phone, Defendant continued to harass Plaintiff with collection calls using an ATDS and/or artificial or prerecorded voice. Plaintiff felt it was "crazy" how much they were calling his phone even after he told them to stop calling. He felt like he was "losing his mind" and his life for that period was consumed with dealing with the stress of the calls; dealing with the stress of knowing no matter what he said the calls would continue; and dealing with feelings of powerless to do anything to stop the calls from taking over his life. He could not believe that telemarketers could get away with doing this to people.

33. The unrelenting, repetitive calls disrupted Plaintiff's daily activities and the peaceful enjoyment of Plaintiff's personal and professional life, including the ability to use Plaintiff's phone.

34. The calls placed by Defendant to Plaintiff were extremely intrusive, including affecting Plaintiff's relationships with his close family members who witnessed his distress and were distressed to see him so upset.

35. Specifically, out of frustration in dealing with Defendant' unwanted and intrusive calls, Plaintiff began to ignore or send to voicemail many incoming calls from unknown numbers.

36. In doing so, Plaintiff missed important communications from friends and family.

37. Plaintiff's telephone subscriber charges Plaintiff for cellular phone number ending in 1310.

38. Defendant caused an invasion of Plaintiff's privacy by calling his cellular telephone over 20 times in a one-month span in an attempt to make a marketing sale.

39. Defendant caused Plaintiff emotional distress and embarrassment by calling her repeatedly and continuously.

40. Defendant consumed and wasted Plaintiff's cell phone battery life.

41. Defendant wasted Plaintiff's time by calling Plaintiff when Defendant had no right to call Plaintiff.

42. Defendant caused the Plaintiff to suffer the exact type of frustration and annoyance the TCPA was enacted to prevent. *See, e.g., Mey v. Got Warranty, Inc.*, No. 5:15-CV-101, 2016 U.S. Dist. LEXIS 84972, at *8 (N.D.W. Va. June 30, 2016) ("[S]uch calls also cause intangible injuries, regardless of whether the consumer has a prepaid cell phone or a plan with a limited number of minutes. The main types of intangible harm that unlawful calls cause are (1) invasion of privacy, (2) intrusion upon and occupation of the capacity of the consumer's cell phone, and (3) wasting the consumer's time or causing the risk of personal injury due to interruption and distraction.")

### CAUSES OF ACTION

### COUNT I
### NEGLIGENT VIOLATIONS OF THE
### TELEPHONE CONSUMER PROTECTION ACT (TCPA)
### 47 U.S.C. § 227

43. Plaintiff repeats, re-alleges, and incorporates by reference, paragraphs 1-42 of this Complaint.

44. In placing calls to Plaintiff's cellular telephone using an ATDS, an artificial voice, and/or an artificial recorder without Plaintiff's prior express consent, Defendant violated the TCPA, 47 U.S.C. §§ 227 et. seq.

45. As a result of Defendant' negligent violations of the TCPA, Plaintiff is entitled to an award of $500.00 in statutory damages for each and every call made in violation of the statute.

46. Alternatively, in calling Plaintiff after being told that Plaintiff was not interested in selling his car and to stop calling, Defendant knowingly and willfully violated the TCPA.

47. Plaintiff is entitled to treble damages, as provided by statute, up to $1,500.00, for each and every knowing and intentionally violation of the TCPA.

48. Plaintiff is also entitled to and seeks injunctive relief prohibiting such conduct in the future.

## JURY DEMAND

49. Pursuant to the seventh amendment to the Constitution of the United States of America, Plaintiff is entitled to, and demands, a trial by jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays that judgment be entered against Defendant, and Plaintiff be awarded damages from Defendant, as follows:

   A.   An award enjoining the Defendant and/or its affiliates, agents and/or other related entities, as provided by law, from engaging in the unlawful conduct set forth herein;

   B.   An award of $500.00 in statutory damages for each and every call made in violation of the TCPA;

C. An award of $1,500.00 in statute damages for each and every knowing and intentionally violation of the TCPA;

D. An award to Plaintiff of attorney's fees and costs as are allowed by law and equity;

E. An award of any and all other relief that this Court deems just and proper.

Dated: June 6, 2018                                              Respectfully Submitted,


By: /s/ Ramona Ladwig
Ramona Ladwig
State Bar No. 24092659
Anthony P. Chester
State Bar No. 24092253
1910 Pacific Ave., Suite 14155
Dallas, TX 75201
Telephone:  (619) 233-7770
Facsimile:  (800) 635-6425
ramona@westcoastlitigation.com

*Attorneys for Kristopher Frazier*